UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NGUYEN NGODTU CHU,

        Petitioner,

                                    Case No. 1:06-cv-614
v.                                       Hon. Gordon J. Quist

SHIRLEE A. HARRY,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

        Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

        **I.**        **Background**

        This case arises from a robbery that occurred on the morning of Monday, August 9,

1999, in Kentwood, Michigan.  Docket no. 12 at pp. 100-01, 123-25.[1]  Following a jury trial, in

which petitioner was tried jointly with Tan Van Le, the jury convicted petitioner of armed robbery,

M.C.L. § 750.529, and first-degree home invasion, M.C.L. § 750.110a(2).  *People v. Nguyen Ngodtu*

---

[1] The trial transcripts in this case were not identified in a uniform manner.  For purposes of this report, the court will refer to the docket number assigned to the respective transcript as follows: "Day one of twelve day jury trial" (Jan. 29, 2001) - Docket no. 11; "Day two of twelve day jury trial" (Jan. 30, 2001) - Docket no. 12; "Day three of twelve day jury trial" (Jan. 31, 2001) - Docket no. 13; "Day 4 of 12 day jury trial" (Feb. 1, 2001) - Docket no. 14; "Day five of twelve day jury trial" (Feb. 2, 2001) - Docket no. 15;  "Jury Trial -- Volume No. I" (Feb. 5, 2001) - Docket no. 16; "Trial Transcript -- Volume VII" (Feb. 6, 2001) - Docket no. 17; "Transcript of Trial -- Volume VIII" (Feb. 7, 2001) - Docket no. 18; "Excerpt of Proceedings" (Feb. 8, 2001) - Docket no. 19; "Transcript of Trial -- Volume IX" (Feb. 8, 2001) - Docket no. 20; "Excerpt of Proceedings" (Feb. 9, 2001) - Docket no. 21; "Transcript of Trial -- Volume X" (Feb. 9, 2001) - Docket no. 22; "Day 11 of 12 day jury trial (Excerpt - Testimony of Aivi Nguyen)" (Feb. 12, 2001) - Docket no. 23; "Day 11 of 12 day jury trial (Feb. 12, 2001) - Docket no. 24; "Day 12 of 12 day jury trial" (Feb. 13, 2001) - Docket no. 25.

*Chu a/k/a Tu Nguyen Chu*, No. 234248 (Mich. App. Aug. 12, 2003).[2]  Petitioner was sentenced as

a third-habitual offender, M.C.L. § 769.11, to concurrent terms of thirty to ninety years for the

armed robbery conviction and fifteen to forty years for the home invasion conviction.  *Id.*

Petitioner, through counsel, presented three issues in his direct appeal to the Michigan

Court of Appeals:

> I.      Where the complainants failed to positively identify [petitioner] in a pretrial showup and the direct evidence of [petitioner's] guilt consisted almost entirely of the testimony of the person on whom police found the complainants' jewelry, did the prosecutor fail to prove beyond a reasonable doubt that [petitioner] was guilty beyond a reasonable doubt of the charged offenses.  His convictions must be vacated as they violate his state and federal constitutional rights?
>
> II.     Where, over a hearsay objection by the defense, the trial judge improperly allowed the prosecutor to introduce evidence that [petitioner's] nickname was "Fat," [petitioner was] denied his state and federal constitutional rights to a fair trial?
>
> III.    Did the trial judge deny [petitioner] of his state and federal constitutional rights to a fair trial by refusing to sever his trial from that of his co-defendant, Tan Van Le?

Brief on Appeal (docket no. 27).

The Michigan Court of Appeals affirmed the convictions.  *People v. Nguyen Ngodtu*

*Chu a/k/a Tu Nguyen Chu*, No. 234248.  Petitioner, through counsel, raised the same issues in his

application for leave to appeal to the Michigan Supreme Court, which denied the application.

Docket no. 28;  *People v. Nguyen Ngodtu Chu a/k/a Tu Nguyen Chu*, No. 124536 (Mich. Jan. 27,

2004).

---

[2] Petitioner's appeal was combined with the appeal of co-defendant Tan Van Le, a/k/a Tau Van Le in a single unpublished opinion.  *See People v. Tan Van Le*, No. 234247 (Mich. App. Aug. 12, 2003).

Petitioner filed a motion for relief from judgment pursuant to MCR 6.500 *et seq.*, raising four claims:

I.      Was [petitioner] denied his 6th and 14th Amendment rights where in-court identification was suggestive and counsel was not present at the photographic line-up where [petitioner] was the focus of police investigation?

II.     Was [petitioner] denied his 5th, 6th, 8th and 14th Amendment rights due process of law for prosecutorial misconduct cumulative errors?

III.    Was [petitioner] denied his 14th Amendment right due process of law under the IDA U.S.C.A. Const. Art. 1 § 10 cl. 3?

IV.    Was [petitioner] denied the effective assistance of trial and appellate counsel for failure to raise the cumulative errors of prosecutions misconduct and trial counsel for failing to move for suppression of in-court identification?

Brief in Support of Motion for relief from Judgment (docket no. 1).

The trial court denied the motion on January 31, 2005. *People v. Nguyen Ngodtu Chu*, Kent Co. Cir. Ct., No. 00-11090-FC (Order, Jan. 31, 2005) (docket no. 29). Petitioner raised the same four issues in his application for leave to appeal to the Michigan Court of Appeals. Docket no. 29. The Michigan Court of Appeals denied the application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Nguyen Ngodtu Chu*, No. 264524 (Feb. 3, 2006).

Petitioner raised the following issues in his application for leave to appeal to the Michigan Supreme Court, which he claimed were raised in the Michigan Court of Appeals (in his own words):

I.      Was defendant Chu denied his 6th and 14th Amendment rights where in-court identification was suggested and counsel was not present at the photographic line-up where defendant was the focus of police investigation?

II.     Was defendant Chu denied his 5th, 6th, 8th, and 14th Amendment rights due process of law for prosecutorial misconduct cumulative errors?

   A.     Prosecutorial misconduct assuming facts not in evidence.

   B.     Prosecutorial misconduct solicited prohibited testimony from witness.

   C.     Prosecution violated defendant's Fourteenth Amendment constitutional right due process of law by comments about the retaining of counsel thus denying defendant Chu's Sixth Amendment right to counsel.

   D.     Prosecution violated defendant's Fourteenth right due process of law by calling jury's attention to sentencing consequences.

   E.     Prosecution violated defendant Chu's 8th and 14th Amendment right due process of law by imposing the truthfulness of Dung Nguyen's plea agreement.

   E.a.    Prosecutions failure to introduce exculpatory evidence and failure to investigate.

   F.     Prosecution violated defendant's 14th Amendment Constitutional right of due process of law by allowing known perjury testimony into the trial then using pre-known perjury testimony against defendant.

   G.     Prosecutor violated defendant's 14th Amendment right due process of law. By denying him a fair trial. By introducing alleged crimes by defendant that he had not been charged with.

   H.     Prosecution violated defendant's 5th and 14th Amendment constitutional rights due process of law, by shifting the burden of proof which denied him a fair trial.

   I.     Prosecution violated defendant Chu's constitutional right due process of law by the aforementioned cumulative errors.

III.    Was defendant Chu denied his 14th Amendment right due process of law under the IDA U.S.C.A. Cons. Art. 1 § 10 cl. 3?

IV.    Was defendant Chu denied the effective assistance of trial and appellate counsel for failure to raise the cumulative errors of prosecutions misconduct and trial counsel for failing to move for suppression of in-court identification?

Then, plaintiff raised the following new issue (in his words):

V.    Did the prosecutor error, by filing supplemental "Habitual 3rd" information after the 21 days required by statue? Which denying Chu of his 6th and 14th US Constitutional Amendments and Michigan Constitution, rights of due process and was his trial counsel and appellate counsel ineffective for not challenging the error?

Application for leave to appeal (docket no. 30). The Michigan Supreme Court denied leave to appeal because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Nguyen Ngodtu Chu*, No. 130678 (June 26, 2006).

Petitioner filed the present petition on August 25, 2006, raising eight grounds for habeas relief (in his own words):

I.    Where the complainants failed to positively identify Mr. Chu in a pretrial show up and the direct evidence of Mr. Chu's guilt consisted almost entirely of the testimony of the person on whom police found the complainant's jewelry, did the prosecutor fail to prove beyond a reasonable doubt that Mr. Chu was guilty beyond a reasonable doubt of the charged offenses. His convictions must be vacated as they violate his state and federal constitutional rights?

II.    Over a hearsay objection by the defense, the trial judge improperly allowed the prosecutor to introduce evidence that Mr. Chu's nickname was "Fat." The admission of this evidence deprived Mr. Chu of his state and federal constitutional rights to a fair trial

III.    The trial judge deprived Mr. Chu of his state and federal constitutional rights to a fair trial by refusing to sever his trial from that of his co-defendant, Tan Van Le.

IV.     Was defendant Chu denied his 6th and 14th Amendment rights where in-court identification was suggestive and counsel was not present at the photographic line-up where defendant was the focus of police investigation?

V.     Was defendant Chu denied his 5th, 6th, 8th and 14th Amendment rights due process of law for prosecutorial misconduct cumulative errors?

VI.     Was defendant Chu denied his 14th Amendment right due process of law under the IDA U.S.C.A. Const. Art. 1 § 10 Cl. 3?

VII.     Was defendant Chu denied the effective assistance of trial and appellate counsel for failure to raise the cumulative errors of prosecutions misconduct and trial counsel for failing to move for suppression of in-court identification?

VIII.     Did the prosecutor error, by filing supplemental habitual 3rd information after the 21 days required by the statue?  Which denied Chu of his 6th and 14th constitutional rights of due process and was his trial counsel and appellate counsel ineffective for not objecting to the error?

Petition (docket no. 1).

The court has denied petitioner's  motions seeking to stay the habeas proceedings to exhaust additional claims and to amend his petition.  *See* docket nos. 32, 35, 38, 49, 51, 52, 55, 62 and 65.  Petitioner also filed an inappropriate appeal with the Sixth Circuit Court of Appeals, which was dismissed.  *See Chu v. Harry*, No. 09-1328 (6th Cir. April 24, 2009).  This matter is now before the court on the claims set forth in the petition.

## II.      Procedurally defaulted claims

## A.      Procedural default doctrine

Respondent contends that Issues IV, V, VI, VII and VIII are barred from habeas review under the procedural default doctrine. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Petitioner raised issues IV, V, VI and VII in his motion for relief from judgment pursuant to MCR § 6.500 *et seq.,* which was denied. After an unsuccessful appeal, petitioner raised these four issues, along a new claim (issue VIII), in his application for leave to appeal to the Michigan Supreme Court. Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal these claims because he failed to meet the burden

of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's issues IV, V, VI and VIII, and that portion of issue VII related to the ineffective assistance of trial counsel, on the basis of the state procedural bar of MCR 6.508(D), precludes habeas review. *See Howard*, 405 F.3d at 477; *Burroughs*, 282 F.3d at 414; *Simpson*, 238 F.3d 407.

However, that portion of petitioner's issue VII alleging ineffective assistance of appellate counsel, does not fall in this category. Because state collateral review under MCR 6.500 *et seq.* is the first opportunity for a criminal defendant to address the issue of ineffective assistance of appellate counsel, this issue is not subject to the procedural default doctrine. *See Whiting v. Burt*, 395 F.3d 602, 614 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n. 17 (6th Cir. 2004); *Tucker v. Renico*, 317 F.Supp.2d 766, 773 (E.D. Mich. 2004). For this reason, the court will address the ineffective assistance of appellate counsel as a properly exhausted claim. *See* § IV. D., *infra*. Petitioner's issues IV, V, VI and VIII, and that portion of issue VII related to the ineffective assistance of trial counsel, on the other hand, are procedurally defaulted.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal

law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ineffective assistance of counsel may constitute cause for excusing a procedural default, but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *Id.*; *Strickland v. Washington*, 466 U.S. 668 (1984). Ineffective assistance of counsel adequate to establish cause for the procedural default of some other constitutional claim is itself an independent constitutional claim which can be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Consequently, an ineffective assistance of appellate counsel claim can serve as the cause to excuse a petitioner's procedural default on another claim only if the petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of appellate counsel claim itself. *Lancaster v. Adams*, 324 F.3d 423, 438 (6th Cir. 2003). The court concludes that petitioner's appellate counsel was not ineffective for the reasons as set forth in § IV.D., *infra*. In the absence of ineffective assistance of appellate counsel, petitioner has failed to demonstrate cause for the procedural default.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving,

the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted. He has failed to meet the fundamental miscarriage of justice exception. Accordingly, petitioner's Issues IV, V, VI, VIII, and that portion of Issue VII alleging ineffective assistance of trial counsel, are procedurally barred and not subject to federal habeas review.

### III. Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted all of the issues raised in his petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to state

court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV.    Petitioner's habeas claims

## A.    Insufficient Evidence (Issue I)

First, petitioner contends that insufficient evidence exists to support his convictions. The Michigan Court of Appeals addressed this issue in great detail as follows:

> Chu argues on appeal that the evidence was insufficient to establish his identity as one of the perpetrators. When reviewing the sufficiency of the evidence in a criminal case, this Court "must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt." *People v. Hoffman*, 225 Mich.App 103, 111; 570 NW2d 146 (1997), citing *People v. Wolfe*, 440 Mich. 508, 515; 489 NW2d 748 (1992), *amended* 441 Mich. 1201 (1992). All evidentiary conflicts must be resolved in favor of the prosecution. *People v. Terry*, 224 Mich.App 447, 452; 569 NW2d 641 (1997). We will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *Wolfe*, *supra* at 514-515.

> In making his argument, Chu asks this Court to discount the testimony of Dung Nguyen and his girlfriend. Chu argues that Dung Nguyen was not credible because he was an accomplice and that Dung Nguyen's girlfriend was not credible by virtue of the fact that she was his girlfriend. Chu also asks this Court to discount the testimony of two of the victims, who made in-court identifications of both him and Le. This Court cannot view the evidence in the manner suggested by Chu. As previously noted, we will not interfere with the jury's role of determining the weight of the evidence or the credibility of the witnesses. *Wolfe*, *supra*. Further, we are required to draw all inferences and make credibility choices in support of the jury's verdict. *People v. Nowack*, 462 Mich. 392, 400; 614 NW2d 78 (2000).

> Viewed in this manner, the evidence was sufficient to support Chu's conviction. It was undisputed that Chu and Le were together in Michigan at the time of the robbery. Dung Nguyen testified that he told Chu, Le and a third man, Trung Duc Lu, about the victims. They subsequently discussed the robbery while at a Motel 6. Dung Nguyen specifically identified Chu as one of the men who discussed the robbery, left to commit the robbery, returned to the motel with jewelry, and told Dung Nguyen details about the robbery. Dung Nguyen's girlfriend also identified Chu as one of three men she observed with Dung Nguyen at the Motel 6. She also saw jewelry on the bed in the hotel. In addition, two of the victims positively identified Chu at trial. One testified that Chu was the robber who pointed the gun

at her head. She testified that the robbers were in the house for approximately one hour. Their faces were not covered and she was able to get a good look at them. While this victim did not positively identify Chu in a photographic lineup, she testified that it is easier to identify someone face to face than through a picture. Similarly, while the other victim did not positively identify Chu during a pretrial photographic lineup, she positively identified him in court. Moreover, this victim actually picked Chu out of the pretrial photographic lineup and indicated that he looked like the "chubby" perpetrator. She was seventy percent sure at the time she viewed the photographic lineup, but she was positive when she saw Chu in person. She, too, noted that the robbers were in the house for approximately one hour. She had ample time to observe the robbers and see their faces. In addition, the evidence supported that Chu, Le and a third person fled Michigan on the day of the robbery. Viewed in a light most favorable to the prosecution, *Wolfe, supra*, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that Chu was one of the people who committed the charged crimes.

*People v. Nguyen Ngodtu Chu a/k/a Tu Nguyen Chu*, No. 234248, slip op. at 7-8.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Petitioner does not dispute that the crimes occurred. Rather, petitioner contends that this is a case of mistaken identity. Petitioner's counsel addressed this theory in closing argument, stating that petitioner had an alibi, that "somebody else was the robber," and pointing out that there was no physical evidence to place petitioner at the robbery. Docket no. 25 at p. 52-53.

As the appellate court's opinion demonstrates, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found sufficient evidence to support petitioner's convictions. Four witnesses identified petitioner as one of the robbers. Tsuy Tran, one of the victims, identified petitioner as the robber who held a gun. Docket no. 14, pp. 50-57. Another victim Tian Luu (Tran's mother) also identified petitioner as the robber with the gun. *Id.* at pp. 6-9. Dung Nguyen testified that he stayed at a motel with petitioner and four others the night before the robbery. Docket no. 16 at pp. 95-105. Dung identified petitioner as one of the three men who: discussed the robbery at the motel; left to commit the robbery; returned with stolen jewelry; and told Dung about the details of the robbery (e.g., pushing in the door, tying up the victims, and taking the jewelry). *Id.* Because Dung took part in the crime as a conspirator and accomplice, the court instructed the jurors to consider his testimony "more cautiously" than that of an ordinary witness. Docket no. 24 at p. 121. Finally, Linh My Vuong, a woman who later became Dung's girlfriend, testified that she stayed at the motel with the four men and was told to take some of the jewelry, which included rings, necklaces and bracelets placed on a bed. Docket no. 18 at pp. 79-90.

Notwithstanding this evidence, petitioner contends that the evidence is insufficient because the witnesses were not credible. *See* docket no. 1-2, pp. 1-2. Petitioner's contention is without merit. Credibility of witnesses is not a basis to challenge the sufficiency of the evidence. *United States v. Castaneda*, 315 Fed. Appx. 564, 568 (6th Cir. 2009). "Attacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based

on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner is not entitled to relief on this claim.

## B. Admission of petitioner's nickname (Issue II)

Next, petitioner contends that the trial court erred by allowing hearsay evidence of his nickname. Petitioner bases this claim on the testimony of Bill Long, a police detective from Phoenix, Arizona, who was assigned to the "Organized Crime Bureau" to investigate Asian organized crime and Asian intelligence. Docket no. 15 at pp. 4-5. Detective Brown testified that he was involved in arresting petitioner in Arizona for the purpose of standing trial in Kent County, Michigan. *Id.* at 4-5, 64-65. During his testimony, Long stated that petitioner went by the nickname of "Fat." *Id.* at pp. 65-66.[3]

The Michigan Court of Appeals addressed the issue as follows:

. . . Chu argues that the trial court abused its discretion by allowing hearsay testimony about his nickname. We disagree.

The prosecutor questioned a detective about whether Chu was known by any nicknames. She followed up by asking what the nicknames were. At that point, Chu's counsel objected, arguing that the testimony was hearsay. The prosecutor indicated that she was offering the testimony because she believed other witnesses may refer to Chu by his nickname when testifying. The trial court conditionally allowed the testimony, noting that defense counsel could follow up with the witness about the basis for his knowledge. The information would later be stricken if it was determined that the witness did not have the ability to competently testify about Chu's nickname. Chu's counsel never followed up on the issue.

---

[3] The court notes that it is not unusual for the government to identify criminal defendants by their nicknames or aliases. *See, e.g.*, *United States v. Greenfield*, No. 01-CR-401, 2001 WL 987941 at *3 (S.D. N.Y. Aug. 28, 2001), "[a]liases or nicknames should not be stricken from an indictment where the defendants used, or were known by, such aliases or nicknames and where the Government intends to offer evidence in which the defendants are referred to by such aliases or nicknames" (citations omitted).

The admission of the testimony, subject to exploration of the foundation, was not an abuse of discretion. Evidence of a defendant's use of an alias is admissible to establish identity. *People v. Phillips*, 217 Mich.App 489, 497; 552 NW2d 487 (1996). Further, it is not apparent that the testimony was hearsay. The detective had prior contacts with Chu and may have learned Chu's nickname from Chu himself. If so, the evidence would not be hearsay. MRE 801(d). Further, even if the testimony could be considered improper, reversal is not warranted. "[A] preserved, nonconstitutional error is not a ground for reversal unless 'after an examination of the entire cause, it shall affirmatively appear' that it is more probable than not that the error was outcome determinative." *People v. Lukity*, 460 Mich. 484, 495-496; 596 NW2d 607 (1999). In this case, the victims testified that one of the robbers was fat or chubby. The jury had the opportunity to observe Chu at trial. Evidence that Chu's nickname was "Fat" had little, if any, bearing on the case. The admission of Chu's nickname did not affect the outcome.

*People v. Nguyen Ngodtu Chu a/k/a Tu Nguyen Chu*, No. 234248, slip op. at 8.

Petitioner apparently contends that this hearsay evidence of his nickname, "Fat," coupled with testimony that one of the robbers was "fat or chubby," impaired the defense theory of mis-identification. Petitioner's claim does not raise a federal constitutional issue. "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004), citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991). On collateral review, a federal court must order a reversal when a trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Ford v. Curtis*, 277 F.3d 806, 809 (6th Cir. 2002), quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In this case, the state appellate court found no error in the admission of Detective Long's testimony regarding petitioner's nickname. Furthermore, even if the trial court had erroneously admitted this statement, this reference to petitioner's nickname would not have a substantial impact on the outcome of the trial. The jury had the opportunity to view petitioner in person, and could evaluate for themselves whether

he fit the description of "fat" or "chubby." Accordingly, this claim is denied as not cognizable on federal habeas review.

### C. Trial court's failure to sever trials (Issue III)

Petitioner contends that the trial court erred by failing to sever the trial with his co-defendant and that he was prejudiced by the use of a single jury. The Michigan Court of Appeals set forth a lengthy discussion of the state law regarding severance of criminal jury trials:

> On appeal, both defendants argue that separate juries or separate trials were warranted and necessary. Each defendant requested a separate jury before jury selection began. The trial court denied the requests. We review the trial court's decision for an abuse of discretion. *People v. Hana*, 447 Mich. 325, 331; 524 NW2d 682 (1994), amended 447 Mich. 1203 (1994).

> MCR 6.121 provides, in relevant part:

> (C)     On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

> (D)     On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of the witnesses, and the parties' readiness for trial.

In *Hana*, *supra* at 346-347, the Court stated:

> Severance is mandated under MCR 6.121(C) only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice. The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision. [Emphasis added.]

"Inconsistency of defenses is not enough to mandate severance; rather, the defenses must be 'mutually exclusive' or 'irreconcilable .' " *Id.* at 349. Further, "[i]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice." *Id.*, citing *United States v. Yefsky*, 994 F 2d 885, 896 (CA 1, 1993).

In this case, defendants were not entitled to separate trials or separate juries. Neither defendant clearly, affirmatively and fully demonstrated that any substantial right would be prejudiced by a joint trial, or that separate trials or juries were necessary to alleviate any prejudice. MCR 6.121(C). In addition, neither made a persuasive argument that separate trials were necessary to promote fairness and a fair determination of guilt or innocence. MCR 6.121(D). The arguments offered to support the use of separate juries were without merit. Defendants did not implicate one another as part of their defenses. Rather, they presented virtually identical alibi defenses, which were not irreconcilable or mutually exclusive. Also, there was no potential for jury confusion because the evidence against the two defendants was the same.

In addition, neither defendant has demonstrated that the requisite prejudice actually occurred at trial such that reversal is required. *Hana*, *supra*. We disagree that Chu's closing argument compromised Le's defense in any manner. In closing, Chu's counsel argued that an alibi witness, Amy Gaines, was probably offered money for her testimony. After Chu's closing argument, Le's counsel indicated that he "violently" disagreed with the proposition, espoused by Chu's counsel, that Gaines may have been bribed. The trial court indicated that there was no reason why Le's closing argument had to track Chu's argument. The Court in *Hana* recognized that, in a joint trial, each defendant will inevitably put their own spin on a witness' testimony. *Hana*, *supra* at 348. However, this does not automatically require severance. *Id.* In this case, Chu's counsel put his own spin on the testimony and evidence when he argued that Gaines was probably offered money. While Le's counsel did not agree with this position, he was given ample opportunity address the jury and explain Le's theory of the case and Le's spin on the evidence. The jury was subsequently instructed that the case must be decided on the evidence and that the lawyers' arguments were not evidence. Under the circumstances, Chu's closing argument did not substantially prejudice Le's case.

Similarly, Chu's case was not substantially prejudiced by the trial court's decision to proceed with a single jury. Chu argues that he was prejudiced by testimony that Le offered Gaines money to lie about the alibi. Gaines testified that Aivi Nguyen, another alibi witness, promised Gaines money in exchange for lying about the alibi. Aivi told Gaines the money would come from Le. Gaines testified that she never directly talked to Le about lying in court. The evidence, that Gaines was offered a bribe, would have been admissible against Chu even if he had a separate trial or separate jury. It was undisputed that Chu and Aivi had a romantic relationship. Both Chu and Le planned to offer Aivi as an alibi witness. Evidence that Aivi offered Gaines money to testify, regardless of where the money was

supposed to come from, reflected on the alibi defense as a whole. It was relevant to the issue of Chu's guilt and reflected on the credibility of Aivi's alibi testimony. Because the evidence was admissible against Chu, its admission at the joint trial before a single jury was not prejudicial.

*People v. Nguyen Ngodtu Chu a/k/a Tu Nguyen Chu*, No. 234248, slip op. at 2-3.

"Improper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *See also, United States v. Lane*, 474 U.S. 438, 446 no. 8 (1986). In *Stanford v. Parker*, 266 F.3d 442 (6th Cir. 2001), the court summarized the standard for granting habeas relief for failure to sever criminal trials:

A petitioner seeking habeas relief on the basis of a trial court's failure to sever his trial from his co-defendant's bears a very heavy burden. As a general rule, joint trials are favored. Jurors are presumed to follow the instructions of the court and to give each defendant's case separate consideration. The mere potential for confusion, standing alone, will not outweigh society's interest in the speedy and efficient resolution of criminal trials.

*Stanford*, 266 F.3d at 458-59 (internal citations omitted). Thus, a petitioner has failed to meet this burden where the petitioner "makes no concrete allegation that his due process rights were violated by a joint trial beyond the conceptual argument that a jury may have viewed him as the more culpable co-defendant." *Id.* at 459. Furthermore, a petitioner cannot demonstrate jury confusion where the court admonished the jury to separately consider the evidence as to each defendant, and the record revealed no indication that the court's instructions were ignored. *Id.*

Petitioner contends that he was prejudiced because the jurors were allowed to consider the alleged witness tampering by co-defendant Tan Le. Both petitioner and Le presented alibi defenses based upon the testimony of Aivi Nguyen. Docket no. 20 at pp. 120-66. Aivi testified that she is a friend of petitioner, that petitioner came back to Grand Rapids for a party in August,

1999, and that she, Le, and Amy Gaines were together for the weekend.[4]  *Id.* at pp. 120-41.  Aivi further testified that after spending the weekend with petitioner, she made breakfast on Monday morning and then took petitioner and co-defendant Le to the bus station at about 2:15 p.m. on Monday.  *Id.* at pp. 139-40.

Amy Gaines testified that she rehearsed a story to give an alibi to Le, i.e., that she was with Le and went to a motel for a birthday party.  Docket no. 24 at pp. 102-07.  According to Gaines, Aivi Nguyen promised to pay her $2,500 to tell this lie.  *Id.* at p. 107-08.  Gaines testified that according to Aivi, if she told the story in court and Le went free, then she would receive the money.  *Id.* at 151.  Gaines tried to tell the rehearsed story to the police detectives, but could not remember the storyline.  *Id.* at pp. 109-10.  Gaines later told the police that she lied at the earlier interview.  *Id.* at 112-13.  Then, Gaines cooperated with the police to tape record telephone conversations with Aivi, during which Aivi repeatedly told Gaines just to remember being at a motel for a surprise birthday party.  *Id.* at 144, 171-73.

Petitioner has failed to meet his burden of demonstrating a due process violation.  It was petitioner's counsel who called Gaines as a witness.  *Id.* at p. 96.  On cross-examination, the prosecution used Gaines' testimony to discredit Aivi 's alibi testimony.  *Id.* at 153-78.  In closing argument, petitioner's counsel referred to Gaines as the "key to the whole matter."  Docket no. 25 at p. 57.  Counsel argued that Gaines' original story about the party was the truth and that she changed the story because she did not get her money.  *Id.* at pp. 57-60.  Nothing in the record suggests that Gaines would not have testified if petitioner had a separate trial or a separate jury.  Any potential jury confusion on this issue was addressed by the court's instruction that " we have

_____

[4] Aivi Nguyen does not give a specific date in August 1999.

two defendants and the guilt or innocence of each defendant must be separately determined as to each count charged." *Id.* at p. 127. Furthermore, it appears to the court that petitioner's concern about a joint trial was outweighed by society's interest in a speedy and efficient resolution of this trial, which lasted twelve days, involved many common witnesses, and required the use of an interpreter (*see, e.g.,* Docket no. 13 at p. 70). Accordingly, petitioner's claim should be denied.

### D. Ineffective assistance of appellate counsel (Issue VII)

Finally, petitioner contends that his appellate counsel was ineffective for "failure to raise the issues presented to this [Federal] Court." Docket no. 1-2, p. 15. The only reason given in support of this claim is that "appellate counsel adjudicated facts which were non-prevalent to the record of the case [sic]." *Id.* The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington.* 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Counsel enjoys a "strong presumption" that his conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. "There are countless ways to provide effective assistance in any given case." *Id.*

It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id. See United States v. Perry*, 908 F.2d 56, 59 (6th Cir.1990) ("tactical choices regarding issues raised on appeal are properly left to the sound professional judgment of counsel").

Petitioner has failed to set forth any argument to demonstrate that his appellate counsel was ineffective. The record reflects that appellate counsel raised three issues on appeal. The first two issues addressed legal issues that addressed petitioner's theory of the case, i.e., that the witnesses mis-identified him as one of the perpetrators. The third issue on appeal addressed a significant procedural question, i.e., the trial court's refusal to sever the trials of petitioner and co-defendant Le. Petitioner's conclusory allegation that appellate counsel should have raised many additional issues on appeal does not establish ineffective assistance of appellate counsel. Such unsupported or conclusory allegations of ineffective assistance of counsel fail to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of appellate counsel are not sufficient to warrant habeas relief). Accordingly, this claim should be denied.

## V.    Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**.  Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated:  July 20, 2009                              /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge




ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).